## COOPER vs. SCHWARTZ.

CONTRACTS: COURT AND JURY.  *(1, 2) Contract made for X. by Y. without authority.  What acts or neglect of Y. will operate as ratification. (3) Question of ratification for the jury.*

1. In May, 1867, one W., who had contracted to furnish and put up, in a grist mill which defendant was building, all the machinery and necessary fixtures, left an order in defendant's name, and as his agent, with the C.'s for a large quantity of machinery for said mill.   May 16th, the C.'s wrote to defendant, stating that they had his order made by W., for castings, etc., and that W. had omitted to give certain measurements, and asking for defendant's directions in respect thereto.   June 10th, they again wrote to defendant, *inclosing a bill of lading of shafting* which had been shipped consigned to defendant, calling his attention to their former (unanswered) letter; and stating that they were well along with the work, and would be pleased to have a remittance.   On receipt of this letter, June 13th, defendant wrote to them, acknowledging the receipt of their letter of May 16th; stating that he had not answered it because he expected that W. would have visited them before that time, and have given his own directions; and adding that he (defendant) had made a contract with W. to furnish all the machinery for the mill, and put it up in running order; that W. was not there, and defendant could find nothing in his drawings indicating the dimensions inquired for; and that his (defendant's) contract with W. being for the whole job finished, for which defendant was to pay W. at certain times specified and on certain conditions, he did not feel authorized to give any directions in relation to the machinery contracted for by W.   The bills of lading, etc., were all made out from time to time in defendant's name, and the goods shipped to him, and charged to him on the manufacturer's books, and he never returned any of them.   In an action upon the claim of the C.'s for the contract price of said machinery, *Held*, that upon the facts above stated, the jury might have found that defendant had ratified the order of W. and made it his own, in which case he would be liable thereon; and it was error to refuse instructions to that effect asked by the plaintiff.

2. If defendant meant to repudiate W.'s order made in his name, he should have distinctly notified the C.'s of such repudiation, as soon as he could conveniently do so (or within a reasonable time), and should have promptly returned the bills of lading, which gave him the legal title to and control of the goods.

3. The question whether defendant ratified and adopted the contract made by W., is for the jury, upon all the facts.

APPEAL from the Circuit Court for *Sheboygan* County.

Action for a balance alleged to be due for mill machinery sold and delivered to the defendant by C. & J. Cooper, manufacturers, of Mt. Vernon, Ohio. The plaintiff claimed as assignee of said firm. The defense was, that the machinery was furnished to defendant by one Wilson, under a contract by which Wilson agreed to fit up defendant's mill, then in course of construction at Plymouth in this state; that Wilson was not authorized to purchase upon defendant's account; and that defendant had settled with Wilson, and had fully paid him for said machinery.

On the trial, evidence was received for the defense, against plaintiff's objections, to prove the contract between defendant and Wilson, and the subsequent settlement thereupon, to show that Wilson had no authority to contract for the machinery as defendant's agent; and that defendant took the machinery from the depot nearest his mill by arrangement with Wilson, because he had teams convenient for the purpose. Certain instructions asked by the plaintiff were refused. Such of these as are important here, are set out at length in the opinion; as are also the facts, shown by the evidence, to which they were pertinent.

The defendant had a verdict; a new trial was denied; and plaintiff appealed from a judgment on the verdict.

The cause was submitted for the appellant on the brief of *W. H. Seaman,* who contended, 1. That the court erred in admitting the evidence objected to, after the uncontroverted proof that defendant had received the machinery and all the advantages of Wilson's purchase under the assumed agency, with full notice that he was charged with it, and without any repudiation on his part. The defendant, upon the facts thus proved, was *estopped* from denying an original authority in Wilson or a ratification. 2 Parsons on Con. (6th ed.), 50; *Bolton v. Hillersden,* 1 Ld. Ray., 224; *Thorold v. Smith,* 11 Mod., 72; *Byrne v. Doughty,* 13 Ga., 46; *Johnson v. Smith,*

21 Conn., 627; *Bronson v. Chappell*, 12 Wall., 681; *Blair v. Pathkiller*, 2 Yerg., 407, and other cases cited in 1 Coms., 438; *Morse v. Ryan*, 26 Wis., 356; 12 N. J. Eq., 223; 7 Fla., 338; 4 Jones (N. C.), 54; *Strong v. Ellsworth*, 26 Vt., 366; *Horn v. Cole*, 12 Am. Law. Reg., N. S., 303; *Cornish v. Abington*, 4 Hurl. & N., 549; Bigelow on Estoppel, 554. 2. That the court erred in refusing instructions asked by plaintiff. Even admitting that defendant's letter of June 13th was notice that Wilson was not authorized to purchase for the defendant, and even if it had been sent as soon as defendant was advised of Wilson's assumed agency, still we were entitled to the instructions requested, because defendant accepted the goods which had previously been shipped and billed to him, and all those which followed, in the same manner. The subsequent adoption of an act done by one assuming to be an agent is equivalent to a precedent authority, and goes to the whole transaction. *Ballston Spa Bank v. Marine Bank*, 16 Wis., 120; *Paine v. Wilcox*, id., 202; *Beal v. Park Fire Ins. Co.*, id., 241; *Weiseger v. Wheeler*, 14 id., 101; *Fargo v. Ladd*, 6 id., 117, approving *F. L. & F. Co. v. Walworth*, 1 Coms., 433; *Fredendall v. Taylor*, 26 Wis., 286; 23 id., 538. See also 2 Parsons on Con., 48, sec. 3; Dunlap's Paley, 171; Story on Agency, §§ 239, 242, 250; *Com. B'k v. Warren*, 15 N. Y., 577; *Brisbane v. Adams*, 3 Coms., 131; *Benedict v. Smith*, 10 Paige, 126; *Hoyt v. Thompson*, 19 N. Y., 207; *Maddux v. Bevan*, 39 Md., 485; *Ketchum v. Verdell*, 42 Ga., 534; *Slocomb v. Cage*, 22 La. An., 165; *Gulick v. Grover*, 33 N. J. Law, 463; *Drakely v. Gregg*, 8 Wall., 242; *Vincent v. Rather*, 31 Tex., 77; *Bronson v. Chappell*, 12 Wall., 681; *Mundorff v. Wickersham*, 63 Pa. St., 87.

The brief filed for the respondent is signed by *Palmer, Hooker & Pitkin*, with *D. S. Wegg* of counsel; and the cause was argued orally by *Mr. Wegg*. The argument on that side may be briefly stated as follows:

1. Defendant claimed that the letter of June 13th, was a re-

pudiation of Wilson's contract, and that if the goods were thereafter forwarded and delivered to the defendant, he had a right to presume that it was done upon the credit of Wilson alone. The third and fourth instructions asked were properly refused, because they took from the jury this letter of June 13th, and its effect upon the relation of the parties. 2. The second instruction asked by plaintiff was erroneous in stating that defendant must disaffirm the contract made by Wilson "as soon as he could, after he had notice of the transaction, and that the plaintiff was acting upon the contract." It is very doubtful whether, where one is wholly unauthorized to act in any manner, the person represented to be the principal can ever be deemed to ratify the contract by mere silence. The circuit judge was clearly within all the authorities in telling the jury that they must find for the defendant, if they should find, from all the circumstances of the case, that the letter of June 13th was written within a reasonable time after defendant received notice that Wilson had ordered the goods in his (defendant's) name. This is also the law where an authorized agent exceeds his authority. *Ladd v. Hildebrant*, 27 Wis., 135, and cases there cited. Besides, "the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts." *Ladd v. Hildebrant, supra.* The letter of May 16th, from the Coopers to defendant, informed him that Wilson had left with them an order of some kind for machinery, but did not inform him how much, nor at what price, nor when to be delivered; and the means of ascertaining those facts were not then within defendant's reach, as Wilson was not then at Plymouth. Mere silence in such a case could never be deemed a ratification.

COLE, J. Some of the requests asked on the part of the plaintiff, and refused, were clearly proper, and should have been given without qualification. We refer especially to the second, third and fourth, which were as follows:

" 2. If the jury find that the defendant *Schwartz* so conducted himself in relation to the receipt of the goods addressed to him upon the bills of purchase charging the same to him, that the plaintiff was not distinctly and clearly notified of his repudiation of the charge, and that such disaffirmance by defendant was not made prior to the taking or receiving of any benefits upon his part, then he is liable for the goods; and it must also have been made as soon as he could, after he had notice of the transaction, and that the plaintiff was acting upon the contract.

" 3. The supposed principal (viz., *Schwartz*) cannot be allowed to receive the goods and have the benefits of the contract of Wilson without assuming the contract, if the jury find that he received and had all the goods with a reasonable notice that the plaintiffs were proceeding under that contract, and were manufacturing and sending the goods upon his credit as principal.

" 4. If the jury find that the defendant accepted, held and received the goods, viz., the beneficial results of the contract, after a fair notice that the plaintiff was holding him to the contract of Wilson, the plaintiff is entitled to recover; for the defendant is thereby estopped from denying the original authority or a ratification."

It is really conceded that in May, 1867, one Wilson, a millwright, who had entered into a contract to furnish and put up in a grist mill, which the defendant was building, all the machinery and necessary fixtures, left an order in the defendant's name with C. & J. Cooper, of Mount Vernon, Ohio, for a large quantity of machinery for the mill, representing at the time that he was acting as the agent of the defendant, and had authority to make this order. The defendant claimed that he was not liable, because Wilson was not his agent and was never authorized by him to make any purchase of machinery in his name from C. & J. Cooper, or upon his credit, but that Wilson was to furnish such machinery on his own account,

under his contract. On the other hand, the plaintiff (who was the assignee of the claim of C. & J. Cooper) insisted that if Wilson had not original authority from the defendant to make the purchase and bind him by his acts, still the evidence showed that the defendant had so dealt with the machinery as to make the purchase his own by ratification and subsequent receipt of the goods. It appeared that the firm of C. & J. Cooper proceeded at once to execute the order left by Wilson, and began to manufacture the machinery. On the 16th of May, 1867, they wrote the defendant saying that they had his order, made by Wilson, for castings and shaftings, and stated that Wilson had omitted to give the required diameter of two shafts, and asked for his directions in respect to the same. On the 10th of June, the firm again wrote the defendant, inclosing a bill of lading of shafting which they had shipped consigned to him; calling his attention to their former unanswered letter; and stating that they were getting well along with the work, and would be pleased to have a remittance. This letter was received by the defendant on the 13th of June. On that day he wrote the Coopers, acknowledging its receipt, and the receipt of the one of the 16th of May, which he says he did not answer for the reason that he expected Wilson would have visited them before that time, and have given his own directions. He then adds: "I have made a contract with Mr. Wilson to furnish all the machinery for my mill, and to put up the same in running order. Mr. Wilson is not here, although he agreed to be here three weeks ago. I can find nothing in his drawings that indicates the dimensions of the shafts mentioned. The men employed by him, now at work, are unable to give any information on the subject. My contract with Mr. Wilson being for the whole job finished, for which I am to pay him at certain times specified, and on certain conditions, I do not feel authorized to give any directions in relation to the machinery contracted by him."

The bills of lading and bills of purchase of such goods as

the Coopers did not manufacture, were all along made out in the name of the defendant, and the goods were shipped to him at Plymouth, Wisconsin, and charged to him on the books of the firm. Some of these goods were taken from the depot at Plymouth by Wilson, and the rest by the defendant at the request of Wilson, as the defendant testified, he paying the freight and charging to Wilson the amount on the mill contract. About October 5th, the defendant claims he had a full settlement with Wilson, and paid him for all the machinery furnished. This statement will suffice to show the applicability and pertinency of the requests above quoted, to the facts disclosed on the trial. The evidence certainly tended to prove that the defendant, upon knowledge of the material facts, had, by his conduct in dealing with the goods as he did, ratified and adopted the contract made by Wilson in his name. He received letters from the Coopers, informing him of what Wilson had done on his account. The goods were consigned to him; the bills of lading were sent to him, which clothed him with the legal title, and gave him the right to demand possession of the goods from the carrier. He paid the freight, and himself took a portion of the goods from the depot. All the machinery was put up in his mill, and he had the benefit of it. The jury might well have found upon this evidence, that the defendant had ratified and confirmed the order of Wilson, and made it his own. If so, there would be no·doubt about his liability; for the rule is elementary, that a subsequent ratification, with full knowledge of all the material facts, of an act done by one assuming to be an agent, is equivalent to precedent authority. *Omnis ratihabitio retrotrahitur et mandato priori æquiparatur.*

It is claimed by defendant's counsel, however, that in the letter of the 13th of June, sent to the Coopers, the defendant repudiated Wilson's agency, and gave notice that he would not be responsible for the machinery ordered in his name. This is not our construction of that letter. ·The defendant

does not clearly and explicitly say — as under the circumstances he was bound to do, if he denied the agency — that Wilson had no authority from him to make the order for the machinery, and that he would not be responsible for it. His duty to disavow and repudiate the act of Wilson was urgent, if he did not intend to be bound by it. Besides, he should have promptly returned the bills of lading which the Coopers had sent him, so as to enable them to control the delivery of the goods. But the defendant did not at any time distinctly disaffirm the agency of Wilson, though informed by the letter of the 16th of May that the order for the machinery had been made in his name. He suffered the Coopers to go on manufacturing the machinery on the order; and not until he received the second letter, inclosing a bill of lading of goods consigned to him, which bill he retained, did he send the letter of June 13th. If it was really the object of that letter to notify the Coopers that Wilson had acted without authority, and that the defendant would not be responsible for the machinery ordered, that intention was most imperfectly expressed. Upon its face the letter bears no such meaning.

It would be improper for us to express any opinion as to the effect of the evidence, whether or not it warrants the presumption that the defendant ratified and adopted the contract made by Wilson. That is a question for the jury to determine upon all the facts. We have given our construction of the letter of June 13th, for the purpose of showing that it contains nothing which does away with the error of the court in refusing the above instructions.

To avoid any misapprehension, we will add that by the language in the second request, that the defendant must have notified the plaintiff of his repudiation of Wilson's act " as soon as he could, after he had notice of the transaction, and that the plaintiff was acting on the contract," is meant that the defendant was bound to give that notice as soon as he could conveniently, in other words, within a reasonable time;

and with this understanding of the instruction, we think it was correct.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.