JOHN H. REED & another *vs.* ASHBURNHAM RAILROAD COMPANY.

Suffolk. Nov. 15, 1875.—March 2, 1876. ENDICOTT & LORD, JJ., absent.

In an action to recover for materials alleged to have been sold to a railroad corporation, it appeared that, immediately before the alleged sale, the president of the corporation made a large purchase of railroad iron of the plaintiff, and that the corporation sanctioned the proceeding, received and used the iron and paid for it in the manner agreed to by the president; that, upon the application to the plaintiff by the contractor for the building of the defendant's road, for railroad material to be used, and afterwards actually used in the building of the road, the plaintiff told the president that he would sell to the railroad company the material in question upon its order, but would not sell to the contractor, and that thereupon the president told him to send the materials to the company; that the plaintiff's bill was sent to the president, who replied that he would present it to the directors of the company. Evidence was also introduced that the president always acted for the railroad company on its part, and that the directors when spoken to upon this subject, always referred to the president, and took no part themselves. *Held*, that upon this evidence it was a question of fact for the jury whether the president was the authorized agent of the company in making the purchase.

CONTRACT upon an account annexed for railroad materials alleged to have been sold by the plaintiffs to the defendant corporation, and used in the construction of the defendant's railroad. Trial in the Superior Court, before *Allen*, J., who allowed a bill of exceptions in substance as follows:

It appeared that the plaintiffs were agents of the Bay State Iron Company, and in that capacity, on September 4, 1872, concluded with George C. Winchester, as president of the defendant corporation, the negotiations for a sale of two hundred and forty tons of railroad iron to the defendant corporation amounting to about $20,000.

Winchester was one of the original corporators of the defendant corporation, then recently created by the St. of 1871, *c.* 251. The existence of the corporation and the connection of Winchester as president were admitted; and the weights, quantities and prices of the plaintiffs' bill were not in dispute.

It also appeared that one Lynch had undertaken to build the road by contract made with the corporation by Winchester, and was then engaged in building the road; and that by his contract he was to furnish the iron and the materials named in the plain-

tiffs' bill in this suit. The plaintiffs, acting for the Bay State Iron Company, had refused to sell to Lynch, his credit being insufficient; and on the back of a broker's note of sale of the two hundred and forty tons of railroad iron, in which Lynch's name appeared to have been interlined, the following indorsement was made and signed by Winchester:

" Boston, Sept. 4, 1872. I, George C. Winchester, president of the Ashburnham Railroad Company, hereby guarantee payment of the within named iron as follows, viz., one half cash on delivery of the iron, and one half the Ashburnham Railroad Company's note, at four months from date of delivery, with interest added at 7 % per cent. per annum." The iron was delivered, and the note mentioned was given and paid.

Immediately after the completion of the negotiation above named and on the same day, one of the plaintiffs testified that he called the attention of Winchester to a memorandum which he told Winchester was a memorandum of the quantities and sizes of articles wanted for the road (being the same now sued for), which had been left by one Appleton in behalf of Lynch; and also told Winchester that his firm would not sell the contractor, but would sell the railroad company, if ordered by it. To which Winchester replied, " Go ahead, send them along," or used similar language. Following this conversation, the witness testified that he procured the articles from several sources and caused the same to be forwarded, and entered the same upon the sales book of the plaintiffs to the Ashburnham Railroad Company, in the usual form of charges on book account. The original entries were exhibited and offered in evidence.

. After the articles had all been forwarded, the plaintiffs wrote and mailed the following letter to Winchester, dated Boston, October 28, 1872, and signed by the plaintiffs: " Dear Sir, We inclose herewith our bill for spikes, splices and bolts furnished your road, indorsed with order for payment by your contractor, Mr. John Lynch. By sending us check in payment of same by return mail you will very much oblige, as we are sadly in want of money."

The witness testified in cross-examination that he had no copy of the indorsement of Lynch, but from his best recollection it was simply an acknowledgment of the receipt of the articles for-

warded as a voucher. A copy of the bill was produced in form: "Ashburnham R. R. Co. Bought of John H. Reed & Co."

The plaintiffs offered a letter from Winchester, dated Ashburnham, November 12, 1872. So much of it as referred to this subject was read in evidence and was as follows : " Regarding the bills sent by you against the Ashburnham R. R. Co., having been brought to notice of treasurer, he will present them to directors of said Co. for their consideration at the next meeting."

The plaintiffs afterwards, under date of Nov. 25, 1872, wrote and mailed the following letter to Winchester, signed by them : " Dear Sir, We take the liberty of calling your attention to our bill against your road for spikes, splices, &c. Will you be kind enough to instruct your treasurer to send us a check for the amount of same. We have some amounts to pay, and are short of funds. By giving this your early attention you will very much oblige."

In reply to the foregoing, the plaintiffs testified to the receipt of the following letter, which was read as evidence, dated Ashburnham, Dec. 4, 1872, addressed to the plaintiffs, and signed by Winchester : " Yours of 30th ult. is rec'd. The Directors of the Asb. R. R. have not yet authorized the Treas$^r$. to pay your bill. I will see you on Friday in regard to it."

The following correspondence was also read, having been sent and received in due course of mail. The following letter, dated Boston, Dec. 18, 1872, from the plaintiffs to Winchester : " Sir, Your acct. still remains unsettled. You will please settle it at once."

The following letter, dated Ashburnham, Dec. 19, 1872, from Winchester to the plaintiffs in reply : " Dear Sir, Yours of 18th inst. is rec$^d$. Your account is fully settled on my books for all that I know that I have had of you. If there is anything that I have omitted to cr. I should be pleased to know what it is."

The following letter, dated Boston, Dec. 20, 1872, from the plaintiffs to Winchester : " Sir, Your letter of the 19th is before us. In September last you bought of us for the Ashburnham R. R. splices — bolts & spikes as per inclosed statement — you saying to us at the time that you had to furnish the money and would see that the account was paid. We supposing you

to be a person whose word was to be relied on, took your word and delivered the goods. We will thank you to see that the account is sett¹ed."

One of the plaintiffs testified that during the period of this correspondence he had several interviews with Winchester, in Boston; that on these occasions this bill was spoken of, and that Winchester said on each occasion that money was short, that he had not been able to get his directors together, or spoke in similar language. Some time after the correspondence had ceased, and shortly before the date of the writ, he met Winchester in the street in Boston, who then said for the first time that the articles were not purchased by the railroad, and charged the plaintiff with having sold them to the contractor.

Edward Appleton, a witness called for the plaintiffs, testified that he was a civil engineer, and sometimes took contracts for building railroads; that he went with Lynch to Ashburnham to join in negotiations for the contract to build this road; that Winchester made the negotiations concerning the contract with Lynch on the part of the railroad company; that while the work was going on during a period of about a year, disputes arose chiefly as to the monthly estimates of the work done under the contract, and that he, Appleton, acted for Lynch in adjusting these controversies; that Winchester always acted for the railroad company on its part, and that on several occasions when he spoke to other directors on the subject, they always referred him to Winchester, but took no part themselves.

The plaintiffs rested their case upon the foregoing testimony, and the defendant declined to offer any evidence, but requested the judge to rule that the plaintiffs could not maintain this action upon this evidence, and that no sufficient evidence of any contract on the part of the defendant had been introduced; and the judge ruled as requested. The jury found for the defendant under this ruling; and the plaintiffs alleged exceptions.

*A. Russ & F. W. Hurd*, for the plaintiffs.

*G. A. Torrey*, for the defendant.

AMES, J. Upon this bill of exceptions we are of opinion that there was evidence in support of the plaintiffs' claim. It appeared that immediately before the alleged sale, Winchester, as

president of the defendant corporation, made a large purchase of railroad iron of the plaintiffs, and that the corporation sanctioned the proceeding, received and used the iron, and paid for it in the manner agreed to by Winchester. It also appeared that upon the application to the plaintiffs by Lynch, the contractor for the building of the defendant's road, for spikes and other railroad material to be used, and afterwards actually used, in the building of that road, the plaintiffs told Winchester that they would sell to the railroad company the articles in question, and upon its order, but would not sell to Lynch; and that thereupon Winchester used language which was sufficient (provided he had authority to do so) to make the transaction a purchase by the defendants. There was other evidence showing that Winchester took such a part in the business of the corporation as tended to prove that he was to some extent its authorized agent. The fact of agency may be proved by circumstantial evidence, and if there is any such evidence, even though slight, it should be submitted to the jury. *Forsyth* v. *Hooper*, 11 Allen, 419. *Hall* v. *Pike*, 100 Mass. 495. *Smith* v. *Collins*, 115 Mass. 388.

*Exceptions sustained.*