## COX v. ROBINSON.

(Circuit Court of Appeals, Ninth Circuit. June 7, 1897.)

### No. 314

1. BANKS—AUTHORITY OF OFFICER—ESTOPPEL.
    When the directors of a bank permit an officer to hold himself out to the public as being invested with absolute power to manage and control its affairs, in such manner and for such length of time as to lead innocent persons to make contracts with him, honestly believing that he has the authority he claims, the bank cannot repudiate such contracts.

2. SAME—ASSIGNMENT OF JUDGMENT.
    A national bank, owner of a judgment for the payment of which defendant was bound, through its vice president assigned such judgment to defendant; the consideration being the transfer by defendant to the vice president of another judgment, which the latter had obligated himself individually to pay, but in the interest of the bank. The vice president had no express authority from the directors to make the assignment, but he was the largest stock-

holder, a director, and had long been the principal acting officer, of the bank, and general manager of its business, exercising the power of transferring its property and indorsing its notes, with the knowledge and acquiescence of the directors, and he was generally reputed in the community to be its owner. *Held*, in an action by the receiver of the bank, that the jury were justified in finding that the vice president had authority to make the assignment, and that the bank received a consideration therefor.

In Error to the Circuit Court of the United States for the Southern Division of the District of Washington.

The nature of this action, the general character of the evidence introduced, and the principles of law involved therein, are set forth in the charge of the court to the jury, as follows:

"The plaintiff in this case, Mr. Richard T. Cox, sues, as receiver of the First National Bank of Arlington, Oregon, to recover from the defendant, J. L. Robinson, the amount of a judgment which the bank obtained against a man named N. Cecil. The action is brought against Robinson for the reason that Robinson became surety for the amount that the bank should recover in the action against Cecil, in consideration of discharging a writ of attachment which had been levied on the property of Cecil. The fact that the judgment was recovered by the bank against Cecil is not denied. The fact that Robinson entered into an obligation to pay whatever amount should be recovered in the action is not denied. The suit is resisted on the ground that the bank, which Cox represents as receiver, is not the owner of the judgment; that the judgment has been transferred by an assignment from the bank to the defendant, Mr. Robinson, for good consideration. There has been introduced in evidence a paper which is a certified copy of a purported assignment and transfer of this judgment on the record of the court in which the judgment was entered. This assignment and transfer purport to have been made by the First National Bank of Arlington, Oregon, by J. E. Frick, vice president. The whole case turns upon the question whether or not Mr. Frick had authority to transfer this judgment to Mr. Robinson. That he was vice president of the bank is not disputed, but it is disputed that he had any authority to transfer this judgment. And it is also disputed that the bank received any consideration for the transfer of the judgment. The plaintiff claims that it was illegal on these two grounds: That Frick was not authorized to do that kind of business, and that the bank received no consideration for the transfer of the judgment. On the question as to the consideration for the transfer, I instruct you: First, to constitute a sufficient consideration to give validity to the contract, it is necessary that the bank should have received consideration, or that Robinson should have parted with something that would constitute a consideration. There must have been either something moving to the bank, or something moving from Robinson, to constitute a good consideration to make the transfer legal. And it is immaterial whether it was one or the other. It must be one; but, if Robinson parted with something of value in consideration of this transfer, it has the same effect, in law, whether the bank received it or not, that it would if the bank received something. But further, on that point, the evidence shows that that which Robinson gave as consideration was the assignment of a judgment in his favor against Hoy & Butler. That transfer was made to Frick. Now, if Frick received a valid assignment of the judgment in favor of Robinson, and consideration for that moved from the First National Bank of Arlington to Mr. Robinson,—if the value which Robinson received came from the bank, and not from Mr. Frick,—it would still be a valid consideration moving from Robinson to the bank, because there would be a resulting trust in favor of the bank. And whatever Frick received, when acting for the bank, in consideration of the assets or property of the bank that he transferred, would not be his, although it appeared on the record to be in his name. He would take in trust for the bank, and it would be the property of the bank, in fact and in law. Now, as to the authority which Frick, as vice president of this bank, actually had to do this business: The law providing for creation of national banks does not provide for any such officer, by name, as 'general manager.' It does provide for a president and vice president. The duties and powers of the president and vice president are not defined in the law. In general, the vice president acts in place of the president,—has the power and authority

which belongs to the president,—in the absence of the president; but the law has not defined the powers of either president or vice president. The powers of the corporation are vested in a board of trustees. They possess the power to do the business of the bank; but in the transaction of ordinary business of the bank the depositors and creditors, and all who deal with the bank, seldom deal directly with the board of trustees. But the business of a bank is continuous, and its doors must be open to transact business with the public during business hours, and the business transactions of a bank necessarily have to be performed by agents; and whoever acts for the bank as an agent, with the knowledge and consent of the board of trustees, is to be deemed authorized by the board of trustees to perform the powers which the law vests in the board of trustees. The power of any officer may be limited, or it may be extended. He may have general powers. General powers may be conferred upon him by the by-laws, by resolution of the board of directors, or by the assumption of those powers with the knowledge and acquiescence of the board of trustees. Now, an officer of the bank, acting for it,—transacting its business,—is presumed in the law to have the powers which he assumes publicly with the knowledge and acquiescence of the board of trustees, whether evidence of his powers is contained in the records of the corporation, or in a written instrument or resolution, or whether it simply rests in the fact that the powers are continuously and publicly exercised, and not disaffirmed by the action of the board of trustees. The board of trustees are presumed by the law to see what is made apparent before the eyes of the public in the actions of their agents or officers. They are presumed to see what the public see in the actions of an agent or an official. Now, you have heard the evidence in this case, and it is not pretended that there was a resolution or written instrument giving to Frick whatever powers he had of a general or special character. They are to be determined by the manner in which the business of the bank was done. Such powers as he continually, during the existence of the bank, exercised publicly, must be presumed to have been exercised with the knowledge of the board of trustees; and unless they have disaffirmed or denied, by some public declaration, his right to exercise those powers, they are deemed to have acquiesced and assented that he might continue to exercise those powers, and they are bound by his acts in behalf of the bank. This, being a civil action, is one which the rules of evidence require the jury to decide according to the fair preponderance of the evidence. You should endeavor to harmonize the testimony of the different witnesses as far as it can be. Where there is a conflict in the testimony that is irreconcilable, you must weigh the evidence on one side against that opposed, and decide according to a fair preponderance of the evidence. The defendant comes here asserting the validity of this transfer of the judgment. He has the affirmative, and the burden of proof is upon him to establish that there was a valid transfer of the judgment to him, and he must make it out by at least a fair preponderance of the evidence. If the evidence preponderates against him, or is balanced evenly, so you cannot determine on which side there is a fair preponderance of the evidence, you must decide against the defendant, and in that case the plaintiff would be entitled to a verdict for the amount sued for. If you do find, however, by a fair preponderance of the evidence, facts which, when applied to the case under the rules I have given you, determine that Frick was authorized by the board of trustees to act in a matter of this kind,—to transfer a judgment in behalf of the bank,—and that he did make the transfer— I say, if those facts are established by a fair preponderance of the evidence, then your verdict must be for the defendant. An officer of a national bank, either vice president or other officer, or person who is acting as general manager therefor, has no authority to assign or transfer any claim for money due, in any event, unless expressly authorized to do so, without payment of the amount due on such claim." 70 Fed. 760.

Cox, Cotton, Teal & Minor and B. L. & J. L. Sharpstein, for plaintiff in error.

Thomas H. Brents and Wellington Clark, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts as above). About the time the First National Bank of Arlington, Or., sued out the attachment against Cecil, Robinson, the defendant in error, sued out an attachment in the same county against one L. D. Hoy and one Charles Butler, as partners under the firm name of Hoy & Butler, for a sum in excess of the amount for which the bank sued Cecil, and caused a garnishment to be served on the First National Bank of Arlington. Afterwards Hoy & Butler, as principals, and J. E. Frick, as surety, executed a bond or undertaking whereby they agreed to pay to defendant in error the amount of any judgment which he should recover in said action, and thereby procured the discharge of his attachment. The contention of the defendant is that, in the adjustment of these judgments, Frick, on behalf of the bank, and in its name, and as its vice president, assigned to him the bank's judgment against Cecil, and that he assigned to Frick his judgment against Hoy & Butler, taking from Frick his personal note for some $1,200, and a few dollars in cash to cover the difference in amount between the two judgments; that in executing the bond as surety for Hoy & Butler, and in assigning the judgment of the bank against Cecil, Frick acted for the bank as its managing agent. The contention of the plaintiff in error is that there is no evidence tending to show any authority in Mr. Frick to transfer the Cecil judgment. The argument on behalf of the plaintiff is to the effect that the cashier of a bank is the executive officer of the bank, through whom the entire financial operations of the bank are conducted; that neither the cashier nor any other officer could make any contract involving the payment of money or transfer of property without express authority from the directors; that there was no such officer as "general manager" or "managing agent" of the bank known to the law, or mentioned in the by-laws of the corporation; that the evidence was wholly insufficient to justify a jury in finding that Frick had any authority to bind the bank in the transaction between himself and Robinson; that his acts in attempting to do so were never ratified by the directors; that the bank received no consideration for the transfer of the Cecil judgment, and that the entire transaction was in the personal interest of Frick, and that this fact was known to Robinson at the time of the transfer of the respective judgments; that the clause in the charge of the court, that "Frick's authority to act was to be determined by the manner in which the ordinary business of the bank was transacted," and the clause in the charge, "it is sufficient if Robinson parted with something of value," etc., were erroneous; and that the court erred in not instructing the jury to find a verdict for the plaintiff.

(1) Did Frick have authority to transfer the Cecil judgment to Robinson? (2) Did the bank receive any benefit from the transaction? (3) Did the court err in submitting these questions to the jury? (4) Are the principles of law announced in the charge of the court erroneous?

The correspondence between Frick and Robinson (which is copied in full in the dissenting opinion), considered by itself, tends very strongly to sustain the contention of the plaintiff in error that the assignments of the respective judgments by Frick and Robinson were

transactions between them as individuals. If the case rested upon that testimony alone, it may be that the judgment should be reversed. But the entire testimony must be considered. The record shows that Frick, as vice president, was expressly authorized by a resolution of the board of directors to transact such business "as would be transacted by the president, were he in the county." The assignment of the Cecil judgment purports upon its face to have been made by the bank. It reads as follows:

"Know all men by these presents, that the First National Bank of Arlington, a corporation, for a valuable consideration to it paid by J. L. Robinson, the receipt whereof is hereby acknowledged, has sold, assigned, and transferred, and does by these presents sell, assign, and transfer, to said J. L. Robinson, all its right, title, and interest in and to that certain judgment entered in the circuit court of the state of Oregon for Gilliam county on April 18th, 1893, in favor of said First National Bank, and against N. Cecil, for $3,833.23, and $300.00 attorney's fees, and $149.46 costs, which said judgment is docketed in the Judgment Lien Docket of said county, at page 55 thereof.

"First National Bank, Arlington, Ore.
"J. E. Frick, Vice Pres."

Robinson testified that he had transacted considerable business with the bank through Frick, that Frick always acted as general manager of the bank, and that Frick made the proposition to him to settle the judgments by transferring the same. "He assigned the judgment of the bank to me, and I assigned the Hoy & Butler judgment to him, and I took his note for the difference. * * * Frick represented the bank. He seemed to be manager of the bank's affairs, and represented himself in that way. He signed the judgment, 'The First National Bank of Arlington, by J. E. Frick, Vice President.' He represented to me that he was doing business for the bank. That was my understanding; it was all done for the bank; he assigning me that judgment." Several other witnesses testified to the effect that Frick was not only the vice president and acting president of the bank, but its managing director, and the active agent in all its business affairs and transactions; that he was the principal stockholder thereof; that the public regarded him as having unlimited power to transact any business in which the bank was interested; that the bank was known in the community as "Frick's Bank"; that the power of transferring the property of the bank had been exercised by Frick in other cases with the knowledge of, and without objection on the part of, the directors of the bank; that he had indorsed the bills and notes of the bank in order to secure loans for the bank, and had disposed of other kinds of property belonging to the bank. J. A. Blakely, who was connected with the bank at different times as director and vice president, testified on behalf of defendant that Frick "was the general manager of the bank, so far as transacting its business was concerned." He gave several instances where, in transacting various kinds of business, Frick acted as agent and manager of the bank, and stated that the directors took no action that he was aware of to prevent Frick "from transacting the business which he did." Dan O'Connor was acquainted with the bank for four years; knew the general repute and understanding in the community as to the authority of Frick to represent the bank. He testified that:

"It was generally called 'Frick's Bank.' I know nothing more as to his authority than that he was regarded, so far as I know, as the manager of the bank, and the owner of it. * * * The general reputation in the community in which I live was to the effect that this bank was Frick's bank. This community took in part of Oregon, and all of Klikitat county [Wash.]"

Several other witnesses testified substantially to the same effect. Mr. Frick testified on behalf of the plaintiff in error that he was the vice president, and acted as such "sometimes with the knowledge of the directors, and sometimes without"; that in transacting the business of the bank he took the title to property for the bank in his own name, or the name of the cashier of the bank—

"And the directors would know nothing about it until they happened to see it in examining the bank. * * * The assignment of the judgment of Robinson in this case against Hoy & Butler was made to me in order to release me from liability for its payment, and from liability assumed by me for the benefit of the bank upon the undertaking already referred to. * * * I had very grave doubts at the time of transacting this business whether I had a legal right to do it or not. * * * I was led in the matter of signing the bond through my relations with the bank, and signed this bond where in no event it could be of any value to me, except benefits arising through the bank."

In reply to the question, "Were you not recognized by the directors of the bank, and by the public and those dealing with the bank, as the general superintendent and manager of its business, and as having full authority to transact any kind of business for it?" he said, "I was recognized by the public as being the main official of the bank in transacting all business, and at the same time only had the authority of a vice president." The books of the bank show that Frick was elected director and vice president of the bank for five successive years, from 1890 to 1894, inclusive, "and that his acts, as such vice president, in the way of indorsing and transferring the notes and other securities belonging to said bank, were at the different times ratified and confirmed by said board of directors." The cashier of the bank testified that the vice president and himself assisted each other in the management of the bank; that—

"During the operation of the bank it became necessary for the bank to borrow or raise money, and for the bank to transfer or pledge security for that purpose. * * * Sometimes the board of directors authorized us to do this, and in other cases they did not. * * * I recollect of several instances of such loans being made and such securities being pledged without the ratification being shown in the minutes. * * * Frick made transactions in the general management of the business of the bank without consulting me."

Did the court err in refusing to instruct the jury to find a verdict for the plaintiff? The national courts have uniformly held that a case should not be withdrawn from the consideration of the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. Beatty v. Association, 21 C. C. A. 227, 75 Fed. 65, 68, and authorities there cited. In Railway Co. v. Lowery, 20 C. C. A. 596, 74 Fed. 463, there is an elaborate review of the English as well as of the American cases, resulting in the conclusion that to justify the court in withdrawing the case from the jury the evidence must be so insufficient in fact as to be insufficient in law, amounting to an absence of any material and substantial

evidence which if credited by the jury would in law justify a verdict in favor of the other party; that it is the duty of the trial court, when a motion is made to direct a verdict, to take that view of the evidence most favorable to the party against whom it is desired that a verdict should be directed, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for that party. In the light of all the evidence, we are of opinion that it was within the exclusive province of the jury to determine whether or not Frick had the authority to transfer the Cecil judgment, and to represent the bank in the transaction with Robinson, and whether or not the business was transacted on his part for the bank or for himself. Merchants' Bank v. State Bank, 10 Wall. 604, 644, 649; Trust Co. v. Howell (Minn.) 61 N. W. 141; Kraniger v. Building Soc., Id. 904; Mining Ass'n v. Meredith, 49 Md. 389, 401; Reed v. Railroad Co., 120 Mass. 43, 46; Prescott v. Flinn, 9 Bing. 22; Collins v. Cooper, 65 Tex. 460; Cooper v. Schwartz, 40 Wis. 54; 2 Mor. Priv. Corp. § 633; 4 Thomp. Corp. § 4644. The jury had the right to fairly infer from all the evidence that Frick had the authority, with the knowledge and consent of the directors of the bank, in relation to the powers usually exercised by the vice president, and the custom and usage of the bank in its general business dealings with its customers in the community, to make the contract with Robinson for the bank. It is unnecessary to attempt any general definition of the duties of the respective officers of banking corporations. The usage is not uniform in different cities, and sometimes not the same in different institutions in the same city. Country banks, and banks in small towns and cities, have different rules from those in large cities. Of course, there are certain general rules as to the duties of the cashier, teller, president, or directors. Courts have oftentimes recognized the fact, and have frequently decided that these officers have or have not either exclusive or concurrent powers to do certain acts of the nature designated in the particular case. Customs have sprung up from the necessity and the convenience of business in certain localities, and have prevailed in duration and extent until they have acquired in such localities the force of law. In the present case it is the exceptional class with which we have to deal. It is now well settled by the weight of reason and authority that whenever, in the usual course of the business of the corporation, the president or other officer has been allowed to manage and control its affairs, his authority to represent and bind the corporation may be implied from the manner in which he has been permitted by the trustees or directors of the corporation to transact its business. The acting head of the corporation, whether it is the president, vice president, cashier, or general manager, through whom and by whom the general and usual affairs of the corporation are transacted which custom or necessity has imposed upon the officer,—such acts being incident to the execution of the trust reposed in him,—may be performed by him without express authority; and in such cases it is immaterial whether such authority exists by virtue of his office, or is imposed by the course of business as conducted by the corporation.

Mining Co. v. Anglo-Californian Bank, 104 U. S. 192, 194; Sparks v. Transfer Co., 104 Mo. 531, 539, 15 S. W. 417; Washington Sav. Bank v. Butchers' & Drovers' Bank, 107 Mo. 134, 144, 17 S. W. 644; Lee v. Mining Co., 56 How. Prac. 373; Bank of Batavia v. New York, L. E. & W. R. Co., 106 N. Y. 195, 199, 12 N. E. 433; Calvert v. Stage Co., 25 Or. 412, 414, 36 Pac. 24; Ceeder v. Lumber Co., 86 Mich. 541, 49 N. W. 575; Davenport v. Stone (Mich.) 62 N. W. 722; Libby v. Bank, 99 Ill. 622, 630; Kraniger v. Building Ass'n (Minn.) 61 N. W. 904; Dougherty v. Hunter, 54 Pa. St. 381; Hamm v. Drew, 83 Tex. 77, 81, 18 S. W. 434; Carrigan v. Improvement Co., 6 Wash. 590, 34 Pac. 148; Bank v. Wintler (Wash.) 45 Pac. 38; 1 Mor. Priv. Corp. § 509; 4 Thomp. Corp. § 4883.

In Merchants' Bank v. State Bank, 10 Wall. 604, 644, which was a case involving the power and authority of the cashier of a state bank to buy and sell exchange, coin, and bullion, and to certify checks as being "good," and thereby to bind the bank for the payment thereof, the trial court instructed the jury to find a verdict for defendant. The questions argued by counsel were in several respects similar to the argument of counsel in this case. Referring to the subject of the authority of the cashier to make the purchase of the coin and bullion, the court said:

"(2) It should have been left to the jury to determine whether, from the evidence as to the powers exercised by the cashier with the knowledge and acquiescence of the directors, and the usage of other banks in the same city, it might not be fairly inferred that Smith had authority to bind the defendant by the contract which he made with the Merchants' Bank. (3) Where a party deals with a corporation in good faith, the transaction is not ultra vires, and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them. The jury should have been instructed to apply this rule to the evidence before them. The principle has become axiomatic in the law of corporations, and by no tribunal has it been applied with more firmness and vigor than by this court. Corporations are liable for every wrong of which they are guilty, and in such cases the doctrine of ultra vires has no application. Corporations are liable for the acts of their servants while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances. Estoppel in pais presupposes an error or a fault, and implies an act in itself invalid. The rule proceeds upon the consideration that the author of the misfortune shall not himself escape the consequences, and cast the burden upon another. Smith was the cashier of the State Bank. As such he approached the Merchants' Bank. The bank did not approach him. Upon the faith of his acts and declarations it parted with its property. The misfortune occurred through him, and, as the case appears in the record, upon the plainest principles of justice the loss should fall upon the defendant. The ethics and the law of the case alike require this result. Those who created the trust, appointed the trustee, and clothed him with the powers that enabled him to mislead, if there were any misleading, ought to suffer, rather than the other party."

As to the cashier's powers to certify the checks the court said:

"The questions whether the requisite authority was not inferable, and whether the principle of estoppel in pais did not apply, should in this connection also have been left to the jury."

In Martin v. Webb, 110 U. S. 7, 14, 3 Sup. Ct. 428, 433, the court, in considering the power and authority of a cashier to bind the bank in

the transaction of business which is ordinarily solely within the power of the board of directors, said:

"It is quite true, as contended by counsel for appellants, that a cashier of a bank has no power, by virtue of his office, to bind the corporation, except in the discharge of his ordinary duties, and that the ordinary business of a bank does not comprehend a contract made by a cashier—without delegation of power by the board of directors—involving the payment of money not loaned by the bank in the customary way. Bank v. Dunn, 6 Pet. 51; U. S. v. City Bank of Columbus, 21 How. 356; Merchants' Bank v. State Bank, 10 Wall. 604. Ordinarily he has no power to discharge a debtor without payment, nor to surrender the assets or securities of the bank. And, strictly speaking, he may not, in the absence of authority conferred by the directors, cancel its deeds of trust given as security for money loaned,—certainly not unless the debt secured is paid. As the executive officer of the bank, he transacts its business under the orders and supervision of the board of directors. He is their arm in the management of its financial operations. While these propositions are recognized in the adjudged cases as sound, it is clear that a banking corporation may be represented by its cashier,— at least, where its charter does not otherwise provide,—in transactions outside of his ordinary duties, without his authority to do so being in writing, or appearing upon the record of the proceedings of the directors. His authority may be by parol, and collected from circumstances. It may be inferred from the general manner in which, for a period sufficiently long to establish a settled course of business, he has been allowed, without interference, to conduct the affairs of the bank. It may be implied from the conduct or acquiescence of the corporation, as represented by the board of directors. When, during a series of years, or in numerous business transactions, he has been permitted, without objection, and in his official capacity, to pursue a particular course of conduct, it may be presumed, as between the bank and those who in good faith deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations."

There was some material and substantial testimony to justify the jury in drawing the inference that Frick's undertaking to pay the judgment of Robinson against Hoy & Butler was executed by him on behalf of the bank, and that he took the assignment of that judgment as its trustee, believing the transaction would be beneficial to the bank. The bank had in its possession a draft of Hoy & Butler in the sum of $8,000 for collection. This was attached by Robinson. Frick supposed at the time that the bank would be liable to the extent of any judgment which Robinson might recover. If he in good faith was acting for the bank in giving the undertaking, it would have been morally, if not legally, bound to indemnify him for any loss he might have sustained. The assignments of the judgments were a benefit to the bank. It placed the bank in a position to obtain a benefit by the collection of the Hoy & Butler draft, and a release of its liability on the undertaking. There is no evidence in the case tending in the slightest degree to show any fraud or collusion between Frick and Robinson. The testimony shows that Robinson acted throughout the entire transaction in perfect good faith, believing, and, as found by the jury, having the right to believe, that Frick had the authority to act for the bank. Under these circumstances he parted with property of value. The protection to the corporation in the management of its affairs rests upon its own course of conduct. If it conducts its business in the manner prescribed by its by-laws, through its board of directors, it will always be protected by the courts from any usurpation of power by any of its officers. West St. Louis Sav. Bank v. Shawnee Co. Bank, 95 U. S.

557; Wardell v. Railroad Co., 103 U. S. 651, 657; 4 Thomp. Corp. § 4890. But, when the directors of a bank permit an officer to hold himself out to the public as being invested with absolute power to manage and control its affairs in such a manner and for such a length of time as to lead innocent persons to make contracts with its officers in the honest belief that such officer is authorized to make such contracts, the bank cannot repudiate the contract by invoking any by-law of the corporation which the directors themselves have negligently allowed to fall into disuse. In addition to the authorities heretofore cited, see Crowley v. Mining Co., 55 Cal. 273; McKiernan v. Lenzen, 56 Cal. 61; Ditch Co. v. Zellerbach, 37 Cal. 543; Railway Co. v. Simons (Tex. Civ. App.) 25 S. W. 996; Fifth Ward Sav. Bank v. First Nat. Bank, 48 N. J. Law, 513, 7 Atl. 318; Hirschmann v. Railroad Co., 97 Mich. 384, 396, 56 N. W. 842; Greig v. Riordan, 99 Cal. 316, 322, 33 Pac. 913; The Vigilancia, 19 C. C. A. 528, 73 Fed. 452, 456; Milling Co. v. Kaiser (Colo. App.) 35 Pac. 677, 679.

We are of opinion that the court did not err in announcing the principles of law applicable to this case. Admitting it to be true that there was considerable testimony which would have justified the jury to find a different verdict, yet it cannot be said that the finding of the jury is wholly unsupported by the evidence. The judgment of the circuit court is affirmed, with costs.

ROSS, Circuit Judge. I dissent. This action was brought by the plaintiff in error, as receiver of the First National Bank of Arlington, Or., to recover from the defendant in error the amount of a money judgment which that bank obtained in one of the state courts of Oregon on the 9th day of April, 1893, against a man named Cecil, in which action a writ of attachment was duly issued, and levied upon the property of Cecil, to release which the defendant in error executed a bond by which he undertook and agreed to pay to the bank the amount of any judgment which might be rendered in its favor against Cecil. There is no controversy respecting the amount of that judgment, or respecting the fact that the defendant in error obligated himself to pay the amount of it. But the contention of the defendant in error, and the ground upon which he resists the present action, is that prior to the commencement of this suit that judgment was assigned by the First National Bank of Arlington to the defendant in error for a sufficient consideration, and that at the time of the bringing of the present action the plaintiff in error was not, therefore, the owner thereof. That assignment was executed in the name of the bank by one J. E. Frick, who was at the time, and for years before had been, and for some time thereafter, and up to the closing of the bank, continued to be, its vice president and acting president. The circumstances under which the assignment was made were these: Prior to the bringing of the action of the bank against Cecil, to wit, November 13, 1888, the defendant in error had commenced an action in the same court of Oregon against one L. D. Hoy and one Charles Butler, as partners under the firm name of Hoy & Butler, for a sum in excess of the amount for which the bank sued Cecil, and in which action the defendant in error caused a garnish-

ment to be served on the First National Bank of Arlington, to release which Hoy & Butler, as principals, and Frick, as surety, executed a bond whereby they undertook and agreed to pay to the defendant in error the amount of any judgment which he should recover in that action, and thereby procured the discharge of his attachment. At the time of the service of the garnishment there was in the hands of the First National Bank of Arlington for collection a draft for $8,000 drawn by Hoy & Butler on Campbell & Co., of Chicago. After the rendition of the judgment in favor of the bank against Cecil, and on June 11, 1893, the defendant in error recovered judgment in his action against Hoy & Butler for an amount in excess of the amount of the judgment recovered by the bank against Cecil. In this condition of affairs, Frick, who during all of the times mentioned continued vice president and acting president of the bank, and, as the testimony went to show, its real head, proposed, according to the testimony of the defendant in error himself, to make this sort of an exchange:

"The bank got a judgment," said the witness, "and I gave it a bond, and Frick was a surety on this other bond in the case of Robinson against Hoy & Butler; and, after the two judgments were obtained, Frick proposed to me, in May, 1893— Frick made a proposition to me to settle the judgment that way. He assigned the judgment of the bank to me, and I assigned the Hoy & Butler judgment to him, and I took his note for the difference. He wrote me letters to have mine ready; that he would get it fixed up and send pretty soon. Finally he did send them to me to sign and return. His was signed, and I signed mine and returned to him. The judgment I got against Hoy & Butler was the larger judgment. There was something like $1,200 difference, and Frick gave me his note for the difference. Frick represented the bank. He seemed to be manager of the bank's affairs, and represented himself in that way. He signed the judgment, 'The First National Bank of Arlington, by J. E. Frick, Vice President.' He represented to me that he was doing business for the bank. That was my understanding. It was all done for the bank, he assigning me that judgment. I cannot remember the date, but I have it here in black and white. It was on February 16, 1894, when the judgment and papers reached me. The agreement was made a good while before. February 16, 1894, was when I received it. I sent the judgment which he assigned to me to the clerk's office at Condon. It is on file there now."

Notwithstanding the defendant in error testified that in the transaction Frick represented the bank, and that he represented to him (the witness) that he was doing business for the bank, and that that was the witnesses' understanding, the written correspondence between Frick and the witness altogether fails to bear out that interpretation of the transaction. The record shows that on February 16, 1894, Frick wrote to the defendant in error this letter:

"The First National Bank of Arlington.

"Arlington, Oregon, 2/16, 1894.

"J. L. Robinson, Walla Walla—Dear Sir: Herewith please find judgment against Cecil, assigned, and my note dated at time judgment was taken, bearing interest, 10%, for difference between the two judgments. I made the note payable Aug. 15th, to allow plenty of time, and hope it will meet with your approval. I expect to pay before that time, and stop interest. I made sale of mine at Baker City. My payments are to come in monthly, about $3,000 a month, commencing April first. Mays, Wilson & Huntington say 'that the assignments, when executed, should be attached to judgment-roll docket at the place where the judgment is entered.' Sign and return my assignment.

"Yours, J. E. Frick."

On February 23, 1894, Frick wrote to the defendant in error, inclosing him a draft for $12.40, as the "amount you [Robinson] claim as difference between the amount of my judgment and note and your judgment." February 26, 1894, the defendant in error wrote to Frick, in which letter the defendant in error claimed that after deducting from the amount of his judgment against Hoy & Butler the amount of the Cecil judgment, and the amount of Frick's note to the defendant in error, and the amount of $12.40 transmitted in Frick's letter of February 23, 1894, there was still a balance due him (Robinson) of $8.04; and the writer added:

"I have waited a long time on this matter, and have not crowded you in any way; and I think that, if you will figure this matter up, you will see I am right. If I am not, I am ready to make it right.

"Yours, truly, J. L. Robinson."

March 6, 1894, Frick wrote to the defendant in error this letter:

"The First National Bank of Arlington.

"Arlington, Oregon, Mch. 6, 1894.

"J. L. Robinson, Esq., Walla Walla—Dear Sir: Herewith please find 8.04, amount due you as difference our judgments and note. Please assign and return my judgment. You had better send yours also to Lucas to be filed.

"Yours, J. E. Frick."

In answer to which the defendant in error replied as follows:

"Walla Walla, Wash., March 19, 1894.

"Mr. J. E. Frick, Arlington, Oregon—Dear Sir: Your letter on receipt of deposit just received. It has been in the office here, but you did not have it directed right, and by chance I got it to-day. Will send you your judgment all signed.

"Yours, truly, J. L. Robinson."

It is plain, I think, from this correspondence between the parties, that the assignment from the defendant in error to Frick of the judgment against Hoy & Butler, thereby releasing Frick of his obligation to pay it, was an assignment to Frick as an individual, and was not intended by either of the parties for the benefit of the bank. If so, why was it not made to the bank? There was no difficulty in the way. The assignment could have been made to the bank just as easily as to Frick, if it had been intended for the bank, and certainly that would have been the natural and ordinary course in such event. But what removes any doubt that might otherwise attach to the transaction is the written correspondence between the parties. Not only was the difference between the amount of the two judgments covered by the personal note of Frick and two small sums of money paid by him, but in his letter of February 16, 1894, inclosing his personal note for that difference in part, he explained to the defendant in error why he made the note payable August 15th, and from what source he expected to pay it. That source was not the bank, but Frick's mine. "I made the note," said Frick in his letter to the defendant in error, "payable August 15th, to allow plenty of time, and hope it will meet with your approval. I expect to pay it before that time, and stop interest. I made sale of mine at Baker City. My payments are to come in monthly, about $3,000 a month, commencing April first." This and the other correspondence above quoted between Frick and the defendant in error cannot be reconciled with the

claim that the assignment from the defendant in error of his judgment against Hoy & Butler was to Frick for the benefit of the bank; but, on the contrary, it unmistakably shows, in my opinion, that the assignment by the defendant in error to Frick of the Hoy & Butler judgment was to him as an individual, and was so intended by both parties thereto. Such an assignment to Frick did not constitute any consideration for an assignment by Frick, for the bank and in its name, of its judgment against the defendant in error. The court below therefore erred in instructing the jury as it did that:

"To constitute a sufficient consideration to give validity to the contract, it is necessary that the bank should have received consideration, or that Robinson should have parted with something that would constitute a consideration. There must have been either something moving to the bank, or something moving from Robinson, to constitute a good consideration to make the transfer legal, and it is immaterial whether it is one or the other. It must be one; but, if Robinson parted with something of value in consideration of this transfer, it has the same effect, in law, whether the bank received it or not, that it would if the bank received something."

It is not pretended that Frick was expressly authorized to make the assignment to the defendant in error of the bank's judgment against Cecil. Such authority was attempted to be shown by showing that he had the management of the affairs of the bank, and that he was permitted by the directors to appear to the public as the head of the institution; and, moreover, that the board of directors, by its silence and failure to repudiate the assignment, in effect ratified it. The answer to all of this is that the defendant in error was not an innocent party relying upon ostensible authority in Frick, and in good faith accepting through his hands the bank's judgment, for value given the assignor; but, as has been seen, the very proposition made to the defendant in error by Frick for the exchange of the judgments, and afterwards embodied in the correspondence between the parties, carried notice to the defendant in error not only of the possible want of power in Frick to make the assignment of the bank's judgment, but direct and positive notice of such want of power; for he knew that the assignment he made to Frick of his judgment against Hoy & Butler was to Frick for his own individual benefit, and the law thereupon charged him with notice that such an assignment constituted no consideration for an assignment by Frick of a judgment belonging to the bank, of which he was the vice president and acting president. See, in this connection, West St. Louis Sav. Bank v. Shawnee Co. Bank, 95 U. S. 557; U. S. v. City Bank of Columbus, 21 How. 356; Bank v. Dunn, 6 Pet. 61; Flannagan v. Bank, 56 Fed. 959. For the reasons stated, I think the judgment should be reversed, and the cause remanded to the court below for a new trial.