*Municipal Court of the City of Boston*
No. 140106
**EMPIRE ENGINEERING CO., INC.**

**v.**

**RICHMOND BROTHERS, INC., D/B/A**

Argued: March 25    Decided: April 8, 1966.

*Present*: Adlow, C.J., Glynn & Foster, JJ.

Case tried to *Brown, Sp. J.*

*Adlow, C.J.*    Action of contract to recover for services rendered in preparing plans for an air conditioning and heating system in the building of the defendant corporation located in the City of Boston. *There was evidence* from Paul E. Pritzker that the plaintiff corporation, Empire Electric Contractors (Empire), of which he was president had submit-

ted a bid to the defendant corporation of $42,745. for furnishing and installing heating and air conditioning equipment in accordance with plans and specifications provided by the defendant; that he was later called to the office of one DeStefano, the architect, where he met Mr. Richmond, the president, manager, and principal stockholder of the defendant; that he was advised that, while the bid of Empire was the lowest bid, it was beyond any amount permitted by the budget and that the work could not be undertaken. At this point Mr. Pritzker advised Mr. Richmond that his engineering department could engineer and design an entirely new and different system which could be furnished and installed for a great deal less than the estimate for the work based on the previously prepared plan. He estimated that such plans would cost between $1,200 and $1.500, and was thereupon authorized by Mr. Richmond to go ahead and design a new system for $1,200. Witnesses present at this interview corroborated Pritzker's version of th conversation. Later Empire prepared the engineering and design work of the new system, and delivered same to Mr. Richmond. These plans were submitted for bids to various air conditioning contractors including the Empire which in submitting its bid included the following statement: "Plan prepared by Empire Engineering Co. Paul E. Pritzker, Registered Professional Enginner are not an

instrument of the proposal but represent a professional service by that company."

All the dealings of Pritzker were with Maxwell Richmond. After all the bids were submitted to the defendant, Mr. Richmond requested Mr. Pritzker to assist him in evaluating them, and this evaluation was made by Mr. Pritzker and sent to Maxwell Richmond. A bill dated May 28, 1965 was sent to the defendant by the Empire demanding payment in the amount of $1,200. Aside from a denial by Maxwell Richmond that he agreed to pay anything for the services, there was no other evidence.

There was a finding for the plaintiff in the amount of $500. After disposing of a variety of requests for rulings, which we need not consider by reason of the limited issues argued by the defendant the court filed the following findings of fact:

"I find as a fact that the defendant entered into an agreement with the plaintiff under the terms of which the plaintiff was to prepare plans for air conditioning the premises of the defendant for a consideration. I find that the fair value of the services rendered to the defendant was in the amount of $500."

Two legal questions are raised by the defendant. The first concerns the authority of the president, manager and principal stockholder Maxwell Richmond to bind the corporation; the second concerns the sufficiency of evidence to support a finding by the court

as to the fair value of the plaintiff's service.

■ With respect to the authority of the president, general manager, and principal stockholder to bind the corporation there was no error in finding that Maxwell Richmond had this authority. Whether or not he had this authority was a question of fact for the court to determine. *Reed v. Ashburnham Railroad Co.,* 120 Mass. 43, 47.

■ In determining questions involving the authority of an agent to bind a corporation, we are governed largely by the extent of the authority asserted by the agent. An agent binds his principal only as to acts within the real or apparent scope of his authority. *O'-Leary v. Fash,* 245 Mass. 123, 124; *Bascombe v. Inferrera,* 271 Mass. 296; See: Article by O. W. Holmes, 5 Harvard Law Review 1.

■ The test applied to the authority asserted is whether it is within the range of the usual and commonplace responsibilities of the agent whose acts are under review. *Henderson v. Raymond's Syndicate,* 183 Mass. 443. It is on this theory that conduct involving departures from the routine practices of the agent is denied the sanction of authority. *Horowitz v. S. Slater & Sons, Inc.,* 265 Mass. 143; *Judkins v. Fuller,* 277 Mass. 247. The test is whether the act is "unusual or extrodinary," *DeBlois v. Boylston & Tremont Corp.,* 281 Mass. 498, 520, or whether the transaction in issue involves the expenditure of such large sums of money that they outstrip its ordinary and usual course of business. *Stoneman v. Fox*

*Film Corp.,* 295 Mass. 419, 426-427; *Mass. Hospital Life Ins. Co. v. Nesson,* 286 Mass. 216.

In the situation under review the president of the Empire made an agreement with the man who was the president, manager, and principal stockholder of a company operating one of the principal radio broadcasting stations in the City of Boston. An engagement involving the expenditure of $1,200 can hardly be considered extraordinary for a company of this size. Nor is the fact that the contract involved work of a structural nature extraordinary. In the efficient promotion of the interests of his company one would expect that the preliminary groundwork and planning for an improvement in the facilities of the corporation would be done in the ordinary course of business. We are not concerned here with a major change in the corporation's facilities, but what in our age is minor and of frequent recurrence. There was ample evidence to support the court's finding that the agreement of Maxwell Richmond came within the scope of his ostensible authority.

Whether there was ample evidence to sustain the court's finding as to the fair value of the plaintiff's services, the defendant has little reason to complain. Having found that the plaintiff was engaged by the defendant to prepare plans for a price of $1,200 the evidence would have sustained a finding for the plaintiff in that amount. While we are left in the dark by reason of the absence in the report

of any evidence detracting in any way from the merit of the plaintiff's work, we must assume that the court treated the $1,200 price as a price ceiling on the undertaking rather than a fixed price, and based its finding on what he considered a fair price for the work done. In matters involving these rather routine tasks it is within the competence of the trier of the facts, be it judge or jury to consult its own experience to evaluate the services rendered. *Bradford v. Cunard Steamship Co.,* 147 Mass. 55, 57; *Piper v. Childs,* 290 Mass. 560, 563; *Maynard v. Royal Worcester Corset Co.,* 200 Mass. 1, 8.

*Report dismissed.*

Louis A. Zonderman of Boston for the Plaintiff.